# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

**CRAIG T. GOLDBLATT**
**JUDGE**



**824 N. MARKET STREET**
**WILMINGTON, DELAWARE**
**(302) 252-3832**

March 28, 2024

<u>**VIA CM/ECF**</u>

Re:   *In re Allegiance Coal USA Limited, et al.,* No. 23-10234; *Collins St Convertible Notes Pty Ltd v. Allegiance Coal USA Ltd, et al.,* Adv. Proc. No. 24-50016

Dear Counsel:

The debtors in these cases owned and operated two coal mines.  Debtors filed for bankruptcy in the hopes that they could either reorganize in bankruptcy or sell their businesses on a going concern basis.  The case began with, on the first day of the case, a hotly contested hearing in which the debtor sought to use cash collateral over the vigorous objection of its secured creditor, Collins St.  That is rarely a hallmark of a case that is bound for a happy ending.  This one turns out to be no exception to that rule.  Here, after the Court granted the debtor the use of cash collateral (having found, based on the evidence presented, the secured creditor to be adequately protected) the parties reached an agreement under which the secured creditor agreed to provide the debtor with post-petition financing.

The debtors' efforts to reorganize or find a going concern buyer thereafter floundered, as a result (the debtors said) of market forces more broadly affecting coal

prices. The case then transitioned into an orderly liquidation in chapter 11, with the debtors retaining an auctioneer to sell off their assets, primarily mining equipment. The net result is an unfortunate one. These cases are administratively insolvent. The debtors thus moved to dismiss them.

That motion gives rise to the dispute now before this Court. The debtors motion to dismiss contemplates establishing a mechanism for distributing the remaining cash first to satisfy claims that are subject to the carve-out in the DIP order, and then to Collins St, the secured lender.

In response to that, Collins St brought this adversary in which it seeks a declaration that the fees incurred by its counsel are senior to the carve-out from the DIP liens. Collins St thus asks for an order compelling the payment of its legal fees before any amount is distributed to the beneficiaries of the DIP carve-out.

The debtors asked this Court to, in effect, bulldoze Collins St by going ahead and entering the dismissal order in the form they had proposed without even entertaining the Collins St complaint. This Court declined that invitation, and instead directed prompt briefing on a motion to dismiss the Collins St complaint, such that the Court could consider the issue in advance of the continued hearing on the debtors' motion to dismiss, which is now set for April 2, 2024. The Court noted that if were to grant the motion to dismiss the Collins St complaint, that would likely resolve the only objection to the motion to dismiss, which could then be considered on the merits at the April 2 hearing. If the Court were to deny the motion to dismiss the

*In re Allegiance Coal USA Limited, et al.,* No. 23-10234; *Collins St Convertible Notes Pty Ltd v. Allegiance Coal USA Ltd, et al.,* Adv. Proc. No. 24-50016
March 28, 2024
Page 3

complaint, the April 2 hearing would then go forward as a status conference in which the Court would address with the parties the manner for bringing the dispute (and the bankruptcy case) to resolution.

For the reasons described below, the Court concludes that the Collins St complaint does not state a claim for which relief can be granted. The Court will thus dismiss the complaint and go forward with the hearing on the debtors' motion to dismiss the bankruptcy case on April 2.

By way of context, § 364 of the Bankruptcy Code authorizes a debtor to grant substantial protections to a party willing to extend post-petition credit to a debtor in possession. Section 364(b) authorizes granting the lender an administrative claim under § 503(b)(2).[1] Section 364(c) authorizes the Court to grant "superpriority" status to such postpetition lenders – priority over all other administrative claims and a lien on any unencumbered assets – when circumstances warrant.[2] And § 364(d) authorizes the Court to grant the new lender a lien that "primes" prepetition liens (subject to the prior lienholders' receipt of adequate protection).[3]

The DIP order this Court entered in this case provided Collins St with each of these protections.[4] The challenge associated with the granting of these kinds of

---

[1] 11 U.S.C. § 364(b).

[2] *Id.* § 364(c).

[3] *Id.* § 364(d).

[4] *In re Allegiance Coal USA Ltd.,* Bankr. D. Del. No. 23-10234-CTG, D.I. 308 ("Final DIP Order") at ¶¶ 12, 13.

*In re Allegiance Coal USA Limited, et al.,* No. 23-10234; *Collins St Convertible Notes Pty Ltd v. Allegiance Coal USA Ltd, et al.,* Adv. Proc. No. 24-50016
March 28, 2024
Page 4

protections is that it creates the risk that, if it turns out when all is said and done that the estate has insufficient value to pay the DIP lender in full, no funds will be available to pay the administrative costs of the bankruptcy case, including those of the professionals.

The usual solution to this problem is to require a "carve-out" from the DIP obligations to cover those administrative costs. "Carve outs are agreements between a secured lender and the debtor-in-possession that provide that administrative expenses may be paid out from a secured creditor's collateral."[5] The mechanic of the carve-out is typically that upon "the termination of the DIP financing and notice from the DIP lenders to certain interested parties … a certain reserve amount will be carved-out for the payment of the fees and expenses of professionals that are incurred after the delivery of such notice."[6] The inclusion of such a "carve out" from the DIP lender's priority status has become a standard practice in chapter 11 cases. Indeed, the bankruptcy court for the Southern District of New York observed, almost 25 years ago, that "it has been the uniform practice in this Court ... to insist on a carve out from a super-priority status and post-petition lien in a reasonable amount designed to provide for payment of the fees of debtor's and the committees' counsel and possible trustee's counsel in order to preserve the adversary system."[7]

---

[5] Brian Trust, *The World of Non-core Professional Fees in Chapter 11*, 051704 Am. Bankr. Inst. 73 (2004).

[6] *Id.*

[7] *In re Ames Dep't Stores,* 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990).

*In re Allegiance Coal USA Limited, et al.,* No. 23-10234; *Collins St Convertible Notes Pty Ltd v. Allegiance Coal USA Ltd, et al.,* Adv. Proc. No. 24-50016
March 28, 2024
Page 5

Consistent with that practice, the DIP order in this case contains precisely such a carve-out.  Paragraph 17 of the Final DIP Order provides that the DIP liens are subordinate to the allowed professional fees in the bankruptcy case.[8]  In light of this structure—in which the Code grants first priority status to the DIP obligations but provides a mechanism for the orderly administration of the bankruptcy case by "carving out" certain obligations from the liens that secure those obligations— creating a further category of priority that would come *ahead* of the carve-out would require some measure of acrobatic drafting.  Collins St, however, contends that this feat was accomplished in paragraph 10 (and other provisions) of the DIP Order.  Paragraph 10 provides that Collins St is entitled to recover its fees and expenses and makes no mention of paragraph 17.

The debtors have moved to dismiss the Collins St adversary proceeding on the ground that the language of the DIP documents is clear and unambiguous and cannot be read to grant Collins St's claim for fees ahead of the DIP carve-out.  Collins St contends that the DIP documents are more naturally read to support its reading.  Moreover, it contends that its reading is sufficiently plausible that it is entitled to discovery in order to demonstrate, based on a factual record, that the parties in fact intended to adopt its reading.  Because the Court concludes that the language of the relevant documents is unambiguous and does not elevate the Collins St fees over the carve-out, the Court will grant the motion to dismiss.

---

[8] Final DIP Order ¶ 17(iii).

*In re Allegiance Coal USA Limited, et al.,* No. 23-10234; *Collins St Convertible Notes Pty Ltd v. Allegiance Coal USA Ltd, et al.,* Adv. Proc. No. 24-50016
March 28, 2024
Page 6

The basic legal principles governing this dispute over the meaning of the relevant DIP documents are familiar and not seriously contested:

- The question of whether contract terms are clear or ambiguous is a question of law.[9]

- In making that initial determination, courts applying Delaware law are "guided by the 'elementary canon of contract construction that the intent of the parties must be ascertained from the language of the contract.'"[10]

- "The true test is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant."[11]

- If the court determines that the contract is unambiguous, "the writing itself is the sole source for gaining an understanding of intent."[12]

---

[9] *See L.P.P.R., Inc. v. Keller Crescent Corp.,* 532 Fed. Appx. 268, 273 (3d Cir. 2013).

[10] *Id.* at 273-274 (citing *In re IAC/InterActive Corp.,* 948 A.2d 471, 494 (Del. Ch. 2008) (quoting *Citadel Holding Corp. v. Roven,* 603 A.2d 818, 822 (Del. 1992))). Delaware law is applicable here, as provided by the terms of the DIP loan agreement. *See also In re Trico Marine Services, Inc., 450 B.R. 474, 482 (*Bankr. D. Del. 2011) ("When construing an agreed or negotiated form of order, such as the Sale Order in this case, the Court approaches the task as an exercise of contract interpretation rather than the routine enforcement of a prior court order.") (citations omitted).

[11] *Rhone–Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992); *see also U.S. West, Inc. v. Time Warner, Inc.*, Civ. A. No. 14555, 1996 WL 307445, at *9 (Del. Ch., June 6, 1996) ("The primary rule of construction is this: where the parties have created an unambiguous integrated written statement of their contract, the language of that contract (not as subjectively understood by either party but) as understood by a hypothetical reasonable third party will control.").

[12] *City Investing Co. Liquidating Trust v. Cont'l Cas. Co.,* 624 A.2d 1191, 1198 (Del. 1993); *see also Cohen v. Formula Plus, Inc.,* 750 F.Supp.2d 495, 503 (D. Del. 2010) ("Upon concluding that the contract clearly and unambiguously reflects the parties' intent, the court's

*In re Allegiance Coal USA Limited, et al.,* No. 23-10234; *Collins St Convertible Notes Pty Ltd v. Allegiance Coal USA Ltd, et al.,* Adv. Proc. No. 24-50016
March 28, 2024
Page 7

- "If a contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity. But when there is uncertainty in the meaning and application of contract language, the reviewing court must consider the evidence offered in order to arrive at a proper interpretation of contractual terms."[13]

- Stated differently: The first question is whether, without looking to any "evidence from outside the contract's four corners," the words of the contract are ambiguous, meaning that "reasonable minds could differ as to the contract's meaning."[14]  Only if so does "a factual dispute result" regarding the intended meaning of the ambiguous terms, and the factfinder may then "consider admissible extrinsic evidence" to resolve that dispute.[15]

In engaging this analysis, this Court begins with the premise, stemming from the Bankruptcy Code, that the protections afforded to a DIP lender in a post-petition lien and superpriority claim would put that claim (in the absence of a carve-out) at

---

interpretation of the contract must be confined to the four corners of the document." (internal quotation marks omitted)).

[13] *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.,* 702 A.2d 1228, 1232-1233 (Del. 1997).

[14] *GMG Capital Invs., LLC v. Athenian Venture Partners I, L.P.,* 36 A.3d 776, 783 (Del. 2012).

[15] *Id. See also Eagle Indus., Inc.,* 702 A.2d at 1232.

*In re Allegiance Coal USA Limited, et al.,* No. 23-10234; *Collins St Convertible Notes Pty Ltd v. Allegiance Coal USA Ltd, et al.,* Adv. Proc. No. 24-50016
March 28, 2024
Page 8

the very top of the waterfall established by the Code.  The carve-out, as described above, was created by necessity because of the risks that it would otherwise be impossible to administer a chapter 11 case.  Thus, in the absence of clear language to the contrary, the basic structure of a DIP loan provides that a carve-out from the DIP liens are the first obligations paid out of the proceeds of the estate.  Nothing comes ahead of those obligations without saying so quite clearly.

So what does Collins St point to in support of the assertion that its right to be paid its fees comes ahead of the carve-out?  As this Court understands Collins St's position, it has essentially two categories of arguments.

*First,* Collins St argues that the DIP loan here was "specifically negotiated by the parties to reflect that certain obligations owned by the Debtors to Collins St were not subject to the Carve-Out."[16]  But Collins St nowhere suggests that the DIP Order has express language that says that in so many words.  Rather, it explains that "Collins St negotiated to ensure that its own Fees and Expenses would be paid both first in time ahead of estate professional fees and not subject to the Carve-Out."[17]

The basis for the claim that their fees would be paid first stems from their contention that the DIP budget only authorized the payment of estate professionals to the extent the fees were included in the approved DIP budget, and (they argue)

---

[16] D.I. 13 at 2.

[17] *Id.*

*In re Allegiance Coal USA Limited, et al.,* No. 23-10234; *Collins St Convertible Notes Pty Ltd v. Allegiance Coal USA Ltd, et al.,* Adv. Proc. No. 24-50016
March 28, 2024
Page 9

that no approved DIP budget included or authorized the payment of any professional fees.

That is certainly an interesting point, but it is different from saying that the DIP Order's carve-out is subordinated to Collins St's fees.  If Collins St is correct that the DIP loan did not permit the payment of the debtors' professional fees, then it is perhaps possible that the debtors' payment of those fees was an event of default under the DIP.  Even if that is correct, however, it by no means follows that the Collins St fees come ahead of the carve out.  Indeed, the fact that the carve-out includes obligations other than the professional fees (*see* Final DIP Order ¶ 17(i) and (ii)) makes plain that whatever work was being done by the requirement that professional fees be paid only in accordance with an agreed budget, it did not operate to create a level of priority ahead of the carve-out.  Rather, to the extent that Collins St is right that the payment of professional fees violated the terms of the DIP documents, then Collins St would have had whatever remedies it negotiated for under the DIP upon the occurrence of a default.[18]  Nothing in the documents, however, suggests that this remedy is the elevation of Collins St's fees ahead of the carve out.

*Second*, Collins St focuses on the language in paragraph 10 of the DIP Order providing for the payment of its fees and expenses and asserts that the provision is "devoid of any suggestion that it is subject to the Carve-Out."[19]  Collins St goes on to

---

[18] *See* Final DIP Order ¶ 21.

[19] D.I. 13 at 20.

*In re Allegiance Coal USA Limited, et al.,* No. 23-10234; *Collins St Convertible Notes Pty Ltd v. Allegiance Coal USA Ltd, et al.,* Adv. Proc. No. 24-50016
March 28, 2024
Page 10

argue that other provisions of the DIP loan make express that they *are* subject to the Carve-Out, thus creating a negative inference that paragraph 10 is not.

That argument collapses, however, when one appreciates the work that a carve-out is doing against the backdrop of the priority structure of the Bankruptcy Code. A carve-out, after all, provides its beneficiaries the right to be paid out of the very highest priority obligation created by the Code. Whether a provision of the agreement says so or not, *every* obligation of the bankruptcy estate is subject to the carve out.

Collins St's emphasis on the language of paragraph 10 is unavailing for the same reason. To be sure, that paragraph creates a clear and unconditional obligation of the debtor to pay Collins St's fees. Standing alone, language in a court order requiring a debtor to pay creates a post-petition obligation of the debtor that is entitled to administrative priority. To the extent the obligation to pay these fees also fall within the grant of super-priority status under § 364(c)(i) or are secured by the DIP liens (a point the parties here dispute), they would be entitled to a still higher level of priority. But either way, they would be subject to the carve-out. Again, there is no need for that paragraph to include language saying that it is subject to the carve-out. In the absence of contractual language that states clearly to the contrary, the structure of priorities created by the Bankruptcy Code means that it is in the nature of a carve-out that all other obligations are subject thereto.

*In re Allegiance Coal USA Limited, et al.,* No. 23-10234; *Collins St Convertible Notes Pty Ltd v. Allegiance Coal USA Ltd, et al.,* Adv. Proc. No. 24-50016
March 28, 2024
Page 11

      For these reasons, the Court concludes that Collins St's complaint fails to state

a claim for which relief can be granted.  The complaint will accordingly be dismissed.

The parties are directed to settle an order so providing.

                Sincerely,

                Craig T. Goldblatt
                United States Bankruptcy Judge